IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISRAEL GARCIA JR., et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | No. 3:11-CV-3171-N-BH |
| | ) | |
| JENKINS/BABB LLP, et al., | ) | |
| | ) | |
| **Defendants.** | ) | Referred to U.S. Magistrate Judge |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to *Special Order No. 3-251*, this action has been automatically referred for pretrial management.  Before the Court for recommendation is *Defendants Jenkins/Babb, LLP, Robert E. Jenkins, and Jason Babb's Motion to Dismiss Third Amended Complaint Pursuant to FRCP 12(b)(6) and Brief* (doc. 51), filed October 15, 2012.  Based on the relevant filings and applicable law, the motion should be **GRANTED.**

## I.  BACKGROUND

On November 16, 2011, Israel Garcia, Jr. and Melissa R. Garcia (Plaintiffs) filed this *pro se* action against Jenkins/Babb, LLP (Jenkins/Babb), Robert E. Jenkins (Jenkins), Jason Babb (Babb) (collectively, Jenkins/Babb Defendants); and Primary Financial Services (Primary), Margaret Morrissey (Morrissey), Chris Gilbert (Gilbert), Billi J. Geneser Gannon (Gannon),[1] the law firm of Dustin T. Dudley, Attorney at Law (Dudley law firm), and Dustin T. Dudley (Dudley) (collectively, Primary Defendants).  (*See* doc. 3.)  Plaintiffs asserted claims for violations of the Fair Debt Collections Practices Act (FDCPA), the Texas Debt Collection Practices Act (TDCPA), and the Texas Deceptive Trade Practices Act (DTPA).  (*See id.* at 1.)  After being granted the opportunity

---

[1] Gannon was subsequently dismissed pursuant to a joint stipulation of dismissal.  (*See* doc. 42.)

to amend their complaint for a third time, Plaintiffs filed their third amended complaint on October 1, 2012.  (*See* docs. 48 at 2; 49.)

Plaintiffs allege that on November 17, 2010, they received a collection letter from the Dudley law firm (the Dudley letter) on behalf of Primary for a debt allegedly owed to Wells Fargo Bank, N.A. (WFB).  (doc. 49 at 5, 15.)  The letter was dated November 11, 2010, and stated that if Plaintiffs failed to make payment arrangements within 20 days, Primary's "in-house counsel" (Dudley) would recommend that a lawsuit be filed to collect the outstanding balance of $17,018.68.  (*Id.* at 15.)  They purportedly sent Dudley a written request for validation of the debt and a demand that Dudley and Primary "cease and desist" in their collection efforts "until validation of the alleged debt was provided."  (*Id.* at 6.)  They assert that despite evidence from the U.S. Postal Service showing their request was received on November 26, 2010, neither Dudley nor Primary ever replied to their request.  (*Id.* at 6–7.)

On or about January 18, 2011, Plaintiffs received a collection letter from Jenkins/Babb, LLP signed by Jenkins (the Jenkins letter).  (*Id.* at 7, 16.)  The letter was dated January 14, 2011, was printed on Jenkins/Babb, LLP letterhead, listed Jenkins's full name under the letterhead, and indicated that he was a member of the Texas and California Bar.  (*Id.* at 16.)  The letter stated: "We represent [WFB] on the above referenced account ... we, on behalf of Creditor, are attempting to collect a debt."  (*Id.*)  Plaintiffs were informed of their indebtedness to WFB relating to a "personal loan agreement" in the amount of $15,954.32.  (*Id.*)  They were instructed to make their cashier's check "or other certified funds ... payable to [WFB]" and to mail their payment to Jenkins at Jenkins/Babb, LLP's office address.  (*Id.* at 17.)  As "required by law," the letter also provided that "[a]ny information obtained [would] be used for the purpose of collecting the debt described in [the]

2

letter" and listed Plaintiffs' rights under the FDCPA and the U.S. Bankruptcy Code. (*See id.* at 16–18.) The author cautioned that he was "authorized to make only one demand payment" and if the indebtedness was not satisfied "within 40 days," he would "proceed to file a lawsuit to collect [the] debt." (*Id.* at 17.) The letter was signed by Jenkins. (*See id.*)

Plaintiffs contend that the account number listed in the Jenkins letter "was similar to but different" from the account number provided by the Dudley letter, and that the amount sought to be collected was considerably less than the amount stated in the Dudley letter. (*Id.* at 7.) They aver that the different information provided in the letters constituted "a deceptive practice" and "false representation[s] ... in violation of [the FDCPA]." (*Id.* at 8.) Jenkins copied a Primary employee (Morrissey) on the letter, purportedly "indicating" that the Jenkins/Babb Defendants were "acting in concert" with the Primary Defendants. (*Id.* at 7, 17.) Plaintiffs allege that they sent Jenkins/Babb, LLP a written request for validation of the debt and a demand that the law firm "cease and desist" its collection efforts until it validated the debt. (*Id.* at 8.)

In late February 2011, Plaintiffs purportedly received a reply from Jenkins/Babb. (*Id.*) It consisted of a letter signed by Jenkins dated February 15, 2011, and copies of documents relating to a loan, including "a document [titled] 'transaction statement.'" (*Id.*) The letter was copied to another Primary employee (Gilbert). (*Id.* at 9.) Plaintiffs complain that the reply was not a proper validation because it did not include a "complete accounting" or a correct balance due. (*Id.*)

On March 31, 2011, "Plaintiffs were served with a summons for a lawsuit filed by Jenkins/Babb[, LLP]" in state court on behalf of WFB to collect the debt. (*Id.*) They appeared and defended against the lawsuit, but the court ultimately entered summary judgment in WFB's favor. (*Id.* at 9, 11.) On August 15, 2011, Jenkins allegedly sent Gilbert a letter along with a copy of

WFB's motion for summary judgment, thereby demonstrating the "continued collaboration" between the Jenkins/Babb and Primary Defendants.  (*Id.* at 9–10.)

Plaintiffs allege that during the course of that litigation, they sent the Jenkins/Babb Defendants and WFB a "Notice of Intent to Sue" for alleged violations of various consumer protection laws.  (*Id.* at 10.)  In response, the Jenkins/Babb Defendants purportedly mailed Plaintiffs a "threatening" letter.  (*Id.*)  In addition, on the date judgment was entered for WFB, Jenkins allegedly "stuck his head back in the door" of the clerk's office as Plaintiffs awaited their copy of the judgment "and threatened [them] ... by stating [that] if they appealed ..., he was going to add another $5,000 to the judgment."  (*Id.* at 11.)

Plaintiffs aver that all of the defendants engaged in conduct constituting harassment and abuse under § 1692d and false and misleading representations under § 1692e(2)(A) and (10), and violated the debt validation requirements of § 1692g of the FDCPA.  (*Id.* at 6, 8, 10–12.)  They also argue that the defendants violated §§ 392.303(a)(2), 392.304(a)(4), and 392.304(a)(19) of the TDCPA, and that those violations are actionable under the "tie-in" provision of the DTPA.  (*Id.* at 12–13.)  They seek statutory damages, actual damages, pre- and post-judgment interest, attorney's fees, and court costs under all three statutes.  (*See id.*)

On October 15, 2012, the Jenkins/Babb Defendants moved to dismiss Plaintiffs' complaint. (*See* doc. 51.)  Plaintiffs filed a response opposing the motion.  (doc. 55.)  The motion is now ripe for recommendation.

## II.  RULE 12(b)(6) STANDARD

The Jenkins/Babb Defendants move to dismiss Plaintiffs' complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 51 at 5–10.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded  complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the miscon-

duct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 679.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196.  When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the Court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion.  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007).  However, "[i]f . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

"Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Similarly, documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]."  *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003).  Lastly, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."  *Norris v. Hearst*

6

*Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.

1994).  Accordingly, documents falling under these categories may be properly considered without

converting the motion to dismiss into a motion for summary judgment.

Here, Plaintiffs have attached to their complaint copies of what they contend are the Dudley

and Jenkins letters.  (*See* doc. 49 at 15–19.)  Because these documents are considered part of the

pleadings, conversion of the motion to dismiss into a motion for summary judgment is unnecessary.

*See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

### III.  FDCPA CLAIMS

The Jenkins/Babb Defendants seek to dismiss Plaintiffs' FDCPA claims on grounds that their

factual allegations fail to state a viable claim for relief.  (doc. 51 at 5–10.) Plaintiffs assert claims

against the Jenkins/Babb Defendants under § 1692d of the FDCPA for engaging in "conduct the

natural consequence of which is to harass, oppress, and abuse," § 1692e(2)(A) and (10) for making

"false, deceptive, and misleading representations in connection with debt collection," and § 1692g

for their alleged failure to verify the debt and cease their collection efforts while Plaintiffs'

verification request was pending.  (*See* doc. 49 at 5–12.)

The purpose of the FDCPA is to eliminate "abusive, deceptive, and unfair debt collection

practices by debt collectors." 15 U.S.C. § 1692(e).  The Act also seeks to "ensure that those debt

collectors who refrain from using abusive debt collection practices are not competitively

disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle,*

*McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)).

Among other things, the FDCPA prohibits a debt collector from engaging "in any conduct the

natural consequence of which is to harass, oppress, and abuse," and from making "false, deceptive,

7

and misleading misrepresentations in connection with debt collection." 15 U.S.C. §§ 1962d and

1962e.  The Act also requires a debt collector, within five days after its "initial communication with

a consumer in connection with the collection of any debt," to provide the consumer with disclosures

concerning her rights to dispute the debt or request validation of the debt.  *See id.* § 1692g(a).[2]  If

the consumer disputes or requests verification of the debt, the debt collector must "cease collection

of the debt ... until the [requested information] is mailed to the consumer."  *Id.* § 1692g(b).

## A.      Liability under the FDCPA

The Jenkins/Babb Defendants first argue that Plaintiffs' claims under the FDCPA fail and

should be dismissed because they do not allege sufficient facts to support the claim that Defendants

are liable as "debt collectors" under the FDCPA.  (doc. 56-1 at 5–6.)

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The statute sets forth two categories

of debt collectors, those who collect debts as the "principal purpose" of their business and those who

collect debts "regularly."  *Hester v. Graham, Bright & Smith, P.C.*, 289 F. App'x 35, 41 (5th Cir.

---

[2]  The required disclosures are:
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity
of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the
debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a
judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer
by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will
provide the consumer with the name and address of the original creditor, if different from the current
creditor.
15 U.S.C. § 1692g(a).

2008).  "A person may 'regularly' collect debts even if debt collection is not the principal purpose

of his business."  *Id*.  "Whether a party 'regularly' attempts to collect debts is determined, of course,

by the volume or frequency of its debt collection activities."  *Brown v. Morris*, 243 F. App'x 31, 35

(5th Cir. 2007) (citing *Garrett v. Derbes*, 110 F.3d 317 (5th Cir. 1997)).

Plaintiffs claim the Jenkins/Babb Defendants are liable as "debt collectors" under the

FDCPA because they use "instrumentalities of interstate commerce or the mails in [a] business the

principal purpose of which is the collection of ... debts, and/or regularly collect[] or attempt[] to

collect, directly or indirectly, debts owed or due, or asserted to be owed or due another."  (doc. 49

at 2–3.)

### 1.    *Jenkins/Babb, LLP*

The copy of the Jenkins letter attached to the complaint shows that it was printed on

Jenkins/Babb, LLP letterhead and stated that the sender(s) were attempting to collect a debt on

behalf of WFB.  (*See* doc. 49 at 16.)  As "required by law," the letter informed Plaintiffs that any

information obtained would "be used for the purpose of collecting the debt" and listed the

§ 1692g(a) disclosures. (*See id.* at 16–18.)  An attachment titled "Fair Debt Collection Practices Act

Notice" contained information regarding Plaintiffs' rights under the FDCPA and the U.S.

Bankruptcy Code, as well as their right to "bring a court action to assert the non-existence of a

default or any other defense." (*See id.* at 18.)  Plaintiffs were instructed to make their check payable

to WFB and mail it to Jenkins at Jenkins/Babb, LLP's business address.  (*See id.* at 17.)  The letter,

when viewed in the light most favorable to Plaintiffs, gives rise to a reasonable inference that

Jenkins/Babb, LLP engaged in a business the "principal purpose of which [was] the collection of

debts ... owed or due or asserted to be owed or due another."  *See* 15 U.S.C. § 1692a(6).

Accordingly, the Jenkins/Babb Defendants' motion to dismiss on this ground should be denied as it relates to Jenkins/Babb, LLP.

### 2.   *Jenkins*

The Jenkins letter appeared to be prepared by Jenkins because it included his name under the firm's letterhead, listed his Bar affiliations, and was signed by him.  (*See* doc. 49 at 16–17.) Plaintiffs were instructed to mail their check to Jenkins at the law firm's address.  (*See id.* at 17.) The letter's author (presumably Jenkins) was "authorized to make only one demand for payment" and cautioned that if the balance was not paid within 40 days, he would "proceed to file a lawsuit to collect [the] debt."  (*Id.*)  In addition, Plaintiffs allege that Jenkins signed the summons to the WFB action, and that he filed and successfully argued WFB's motion for summary judgment in that suit.  (*Id.* at 9, 11.)  Seen in the light most favorable to Plaintiffs, the Jenkins letter, together with their allegations regarding Jenkins's participation in the WFB action (which are accepted as true for purposes of this motion), raise a reasonable inference that Jenkins was a debt collector because he either engaged in a business the "principal purpose of which [was] the collection of debts" or "regularly collect[ed] or attempt[ed] to collect, ... debts owed or due or asserted to be owed or due another."  *See* 15 U.S.C. § 1692a(6); *see also Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) (holding that the FDCPA applies to "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings").  Accordingly, the Jenkins/Babb Defendants' motion to dismiss should be denied on this ground as it relates to Jenkins individually.

### 3.   *Babb*

In addition to their claim that Babb was a debt collector under the FDCPA, Plaintiffs also contend that he is liable under the Act because he, "as principal of Jenkins/Babb, [LLP]," "was

aware or should have been aware of the actions taken by Jenkins and Jenkins/Babb[, LLP]" and "had a duty to oversee [those] actions."  (doc. 49 at 11.)

a.   <u>Debt Collector</u>

Plaintiffs' pleadings contain no information showing that any of the communications they received from Jenkins/Babb, LLP implicated Babb.  Their allegations fail to show that Babb participated in, or was even aware of, the lawsuit filed by Jenkins/Babb, LLP on WFB's behalf. According to the complaint, it was Jenkins who at all times communicated with Plaintiffs, including during the litigation proceedings in the WFB action.  (*See* doc. 49 at 7–11.)  Given Plaintiffs' failure to show that Babb either engaged in a business the "principal purpose of which [was] the collection of debts," or "regularly collect[ed] or attempt[ed] to collect, ... debts owed or due or asserted to be owed or due another," they fail to raise a reasonable inference that he was a debt collector under the FDCPA.  *See* 15 U.S.C. § 1692a(6).  Accordingly, the Jenkins/Babb Defendants' motion to dismiss should be granted on this ground as it relates to Babb.  *See Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3847362, at *7 (N.D. Tex. July 31, 2012), *recommendation adopted*, 2012 WL 3846539 (N.D. Tex. Sept. 5, 2012) (holding that the plaintiffs' failure to plead sufficient facts to show the defendants were debt collectors was "fatal" to their FDCPA claims).

b.   <u>Vicarious/Personal Liability</u>

Under the relevant Texas statute that was in effect when the events giving rise to Plaintiffs' FDCPA claims allegedly occurred, a partner in a limited liability partnership was "not personally liable for a debt or obligation of the partnership arising from an error, omission, negligence, incompetence, or malfeasance committed by another partner or representative of the partnership" unless the partner: (1) was supervising or directing the other partner or representative when he or

11

she committed the error, omission, negligence, incompetence, or malfeasance; (2) was directly involved in the specific activity in which the error, omission, negligence, incompetence, or malfeasance was committed; or (3) had notice or knowledge of, and failed to take reasonable action to prevent or cure the error, omission, negligence, incompetence, or malfeasance.  Tex. Bus. Orgs. Code Ann. § 152.801(b) (West 2009).

The Fifth Circuit has not yet ruled on the issue of whether, and under what circumstances, a partner in a limited liability partnership can be held personally liable for FDCPA violations committed by his partnership or another partner in his partnership.  A district court in the Fifth Circuit has explained that "[b]ecause no language in the FDCPA would suggest that Congress intended the act to supplant state corporate law which generally limits the liability of a corporation's shareholders, officers, and directors, [a] court must look to state law to determine if [an individual] can be personally liable for the actions [taken] on behalf" of the business entity in which he has an ownership interest.  *Ernst v. Jesse L. Riddle, P.C.*, 964 F. Supp. 213, 216 (M.D. La. 1997).  Based on Louisiana corporate law, the court in *Ernst* found that the defendant could not be held personally liable under the FDCPA for the actions he took on behalf of his professional corporation (P.C.) because "the allegations of the amended complaint ... [did] not support a finding that the corporate veil should be pierced in [that] particular case."  *Id.*  Some courts from other Circuits have reached the same conclusion.  *See, e.g.*, *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) ("Because ... individuals do not become 'debt collectors' simply by working for or owning stock in debt collection companies, ... [the FDCPA] does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced.").

Notably, other courts, including a district court in the Fifth Circuit, have reached the opposite result, holding that "where a shareholder, officer, or employee of a corporation is personally involved in the debt collection at issue, he may be held personally liable as a debt collector without piercing the corporate veil." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436 (6th Cir. 2008) (listing cases); *see also Bray v. Cadle Co.*, No. CIV.A. 4:09-CV-663, 2010 WL 4053794, at *7 (S.D. Tex. Oct. 14, 2010) ("The Court agrees that employees of debt collection companies can be 'debt collectors' under the FDCPA, ... the statute contemplates the term 'debt collectors' as including people working as part of a debt collection business.") (citation omitted).

Here, accepting Plaintiffs' allegations as true for purposes of this motion, regardless of whether Jenkins/Babb, LLP or Jenkins are liable under the FDCPA, Plaintiffs fail to allege any facts to support a finding that Babbs should be held personally liable under either approach. As discussed, the complaint is devoid of any facts showing that Babb was a debt collector under the FDCPA. Likewise, the complaint asserts no facts to support a finding that any of the exceptions listed in Tex. Bus. Orgs. Code § 152.801(b) applies in this case. Accordingly, the Jenkins/Babb Defendants' motion to dismiss should be granted on this ground as it relates to Babb individually.

**B.     "Consumer Debt" under the FDCPA**

The Jenkins/Babb Defendants also argue that Plaintiffs fail to state a viable claim under the FDCPA because their "factual allegations ... are insufficient to establish that [the Jenkins/Babb Defendants] were collecting" a "debt" as the term is defined by the Act. (doc. 56-1 at 8.)

The FDCPA defines a "debt" as "any obligation or alleged obligation of a *consumer* to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or

13

not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5) (emphasis added).  In turn, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 1692a(3).  To determine whether a debt is a "consumer debt" for purposes of the Act, courts have "focus[ed] on the nature of the debt that was incurred, and not [on] the purpose for which the [a]ccount was opened." *Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114-TJW-CE, 2011 WL 1195941, at *5 (E.D. Tex. Mar. 7, 2011), *recommendation adopted*, 2011 WL 1157692 (E.D. Tex. Mar. 28, 2011)(collecting cases).  In identifying the "nature" of the debt, the relevant inquiry is the debtor's "use" of the loaned funds.  *See Garcia v. LVNV Funding*, No. A–08–CA–514–LY, 2009 WL 3079962, at * 3 (W.D. Tex. Sept. 18, 2009) ("Whether a debt is a consumer debt [under the FDCPA] is determined by the use of loan proceeds by the borrower and not by the motive or intent of the lender.") (citing *Bloom v. IC Sys., Inc.*, 753 F. Supp. 314, 317 (D. Or. 1990)).

In their complaint, Plaintiffs allege only that their "obligation" "arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes." (doc. 49 at 5.)  They argue in their response brief that the debt is "a consumer debt" because it arises from a "personal loan agreement." (doc. 55 at 9.)  Although Plaintiffs contend that the debt arose from a "personal loan agreement", they fail  to bring forward factual allegations regarding how they ultimately used the loan proceeds and therefore fail to raise a reasonable inference that they used the purported "personal" loan for "personal, family, or household purposes."  *See Vick*, 2011 WL 1195941, at *5 (explaining that even though the plaintiffs opened the disputed credit card account as a "corporate" account, the debt incurred could be a "consumer debt" depending on how the plaintiffs used the card); *Holman v. W. Valley Collection Servs., Inc.*, 60 F. Supp. 2d 935, 937 (D. Minn. 1999) (holding that even if the

plaintiff's personal credit card was used to incur the debt at issue, the debt was not a consumer debt under the FDCPA because it was incurred to purchase "commercial equipment"); *see also Shapiro v. Haenn*, 222 F. Supp. 2d 29, 40 (D. Me. 2002) (explaining that while the loan documents are "relevant", they are "not dispositive of the character of the loan" for purposes of determining whether the debt is a "consumer debt" under the FDCPA).

In conclusion, because Plaintiffs fail to assert sufficient facts to raise a reasonable inference that the debt at issue was a consumer debt, the Jenkins/Babb Defendants' motion to dismiss should be granted on this ground.  *See Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 943–44 (N.D. Ohio 2009) (holding that the plaintiff "fail[ed] to state an actionable FDCPA claim" because her second amended complaint "d[id] not allege th[e] threshold requirement" that she was a "consumer" and "that the 'debt' being requested '[arose] out of a transaction in which the money, property, insurance, or services which [were] the subject of the transaction [were] primarily for personal, family, or household purposes'") (citing to 15 U.S.C. § 1692a(5)).  Accordingly, Plaintiffs' FDCPA claims against the Jenkins/Babb Defendants should be dismissed with prejudice.[3]

## IV.  STATE LAW CLAIMS

Plaintiffs assert state claims against the Jenkins/Babb Defendants under the TDCPA and argue that these claims are actionable under the "tie-in" provision of the DTPA.  (doc. 49 at 5–13.)

## A.      Supplemental Jurisdiction

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the

---

[3]  Given Plaintiffs' failure to show that the debt at issue was a consumer debt under the FDCPA, they cannot state a viable FDCPA claim against the Jenkins/Babb Defendants.  The Court therefore does not reach the merits of their claims under 15 U.S.C. §§ 1692d, 1692e(2)(A) and (10), and 1692g.

same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims. *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135 (5th Cir. 2008); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[4]  Nonetheless, this rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted).  Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances.  *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right.").  In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience,

---

[4]   Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:
   (1) the claim raises a novel or complex issue of state law,
   (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
   (3) the district court has dismissed all claims over which it has original jurisdiction, or
   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at

*10.

Here, all three factors weigh in favor of retaining jurisdiction over Plaintiffs' state law claims

under the TDCPA and DTPA. First, Plaintiffs' state claims arise from the same "common nucleus

of operative facts" as their federal claims, namely, Defendants' alleged conduct in attempting to

collect a debt from Plaintiffs on behalf of WFB. Requiring Plaintiffs to litigate these claims in state

court would "necessarily require consideration by two distinct courts of the same operative facts"

and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Moreover, because the action

has been pending in this Court for over two years and Plaintiffs have amended their complaint three

times, the Court has spent a substantial amount of time and resources reviewing the pleadings and

researching the legal issues involved, and has become familiar with the merits of their claims. *See*

*McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12,

2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or

supplemental jurisdiction, the court may consider factors such as the amount of time and resources

that it has spent adjudicating the case); *see also Garcia*, 2012 WL 3847362, at *8. Even if the Court

declined to exercise supplemental jurisdiction over these claims against the Jenkins/Babb

Defendants, the same claims would remain pending against the other defendants in this action.

Accordingly, the Court should exercise supplemental jurisdiction over Plaintiffs' claims under the

TDCPA and the DTPA and review them on the merits. *See McCall* 2003 WL 21488211, at *12.

**B.**     *Sua Sponte* **Dismissal**

The Jenkins/Babb Defendants do not address the merits of Plaintiffs' claims under the

TDCPA and the DTPA. (*See* doc. 51 at 9–10.) The Court may *sua sponte* dismiss these claims on

its own motion under Rule 12(b)(6) for failure to state a claim as long as Plaintiffs are given notice of the Court's intention and an opportunity respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citation omitted); *see also Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (explaining that a "court has the authority to consider the sufficiency of a complaint and 'dismiss an action on its own motion as long as the procedure employed is fair'") (citing *Carroll*, 470 F.3d at 1177). The fourteen-day time frame for filing objections to the recommended dismissal ensures that the procedure is fair by providing Plaintiffs with notice and an opportunity to respond. *See Ratcliff v. Coker*, No. 9:08-CV-127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

**C.**     **TDCPA**

Plaintiffs allege that the Jenkins/Babb Defendants engaged in "unfair and unconscionable means ... to collect a debt" under § 392.303(a)(2) and "made false, deceptive, or misleading representations" under §§ 392.304(a)(8) and 392.304(a)(19) of the TDCPA. (doc. 49 at 5–13.) They assert their § 392.304(a)(19) claim as a stand-alone claim under the TDCPA and attempt to recover for all three claims under the DTPA. (*See id.* at 6, 8, 12–13.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *recommendation adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012) (citation omitted). In debt collection, § 392.303(a)(2) prohibits a debt collector from engaging in the unfair or unconscionable practice of "collecting or attempting to collect interest or a charge, fee, or expense incidental to the

18

obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Tex. Fin. Code Ann. § 392.303(a)(2) (West 2004). During debt collection or obtaining information concerning a consumer, § 392.304(a)(8) prohibits a debt collector from using a "fraudulent, deceptive, or misleading representation that employs ... misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." *Id.* § 392.304(a)(8). Section 392.304(a)(19), the "catch-all" provision, prohibits a debt collector from "using any ... false representation or deceptive means to collect a debt or obtain information concerning a consumer." *Id.* § 392.304(a)(19). For a debt collector's statement to constitute a misrepresentation under § 392.304(a), the debt collector "must have made a false or misleading assertion." *Sanghera v. Wells Fargo Bank*, *N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *9 (N.D. Tex. Feb. 21, 2012).

### 1.    *Stand-Alone Claim under the TDCPA*

Liberally construed, the complaint asserts a claim against the Jenkins/Babb Defendants under § 392.304(a)(19) of the TDCPA for "using false representation[s] or deceptive means to collect a debt or obtain information concerning [Plaintiffs]." (doc. 49 at 12.)

Notably, Plaintiffs do not assert any facts in relation to this claim. (*See id.* at 5–14.) They fail to identify the specific actions that constituted a "deceptive means to collect a debt" or the specific statements that were "fraudulent, deceptive, or misleading representations" by part of the Jenkins/Babb Defendants. (*See id.*) Plaintiffs' failure to provide any factual content for their § 392.304(a)(19) claim warrants its dismissal. *See Iqbal*, 556 U.S. at 678 (to survive dismissal, the complaint must provide sufficient "factual content [to] allow[] the court to draw the reasonable

19

inference that the defendant is liable for the misconduct alleged"). The Court should therefore *sua sponte* dismiss this claim for failure to state a claim. *See Carroll*, 470 F.3d at 1177.

### 2.    *"Tie-in" Claims under the DTPA*

Plaintiffs appear to assert their TDCPA §§ 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19) claims under § 17.50(h), the "tie-in" provision, of the DTPA. (*See* doc. 49 at 6, 8, 12–13.)

The TDCPA provides: "A violation of this chapter is a deceptive trade practice under [Tex. Bus. Com. Code § 17.50(h)], and is actionable under that subchapter." Tex. Fin. Code Ann. § 392.404(a) (West 2006). In turn, § 17.50(h) of the DTPA, grants a private right of action under the DTPA to a claimant seeking to recover under the TDCPA. *Miller v. BAC Home Loans Servicing, LP*, No. 6:11CV22, 2012 WL 1206510, at *5 (E.D. Tex. Mar. 23, 2012) (citing to Tex. Bus. & Com. Code § 17.50(h) & Tex. Fin. Code § 392.404(a)), *recommendation adopted*, 2012 WL 1205797 (E.D. Tex. Apr. 11, 2012). To succeed under such a tie-in claim, however, "[the] claimant must show that he is a 'consumer' as defined in the DTPA." *Id.* (citations omitted); *see also Bray*, 2010 WL 4053794, at *9 (explaining that all Texas state and federal courts addressing the issue "seem to have concluded that 'the party bringing a claim under the DTPA for a violation of a tie-in statute must still satisfy the requirement of being a 'consumer'" under the DTPA) (collecting cases).

The DTPA defines "consumer" in relevant part, as "an individual ... who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 765 (N.D. Tex. 2012) (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)). Because the lending of money is not a good or service,

a borrower whose sole objective is to obtain a loan is not a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, (Tex. 1980)); *see also La Sara Grain Co. v. First Nat. Bank of Mercedes*, 673 S.W.2d 558, 566 (Tex. 1984).  As an exception, a borrower may become a "consumer" if he seeks to acquire goods or services with the loan, and the goods or services form the basis of his DTPA claim.  *See Walker*, 970 F.2d at 123 (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

Here, Plaintiffs assert they are "consumers" under the DTPA, but they do not allege they obtained the loan in question to seek or acquire goods or services that now form the basis of their complaint.  (*See* doc. 49 at 2.)  In their response brief, they allege that the "debt" was "a result of a 'personal loan agreement.'"  (doc. 55 at 9.)  Because they concede that their sole objective was to borrow money rather than to seek or acquire goods or services, they fail to show their consumer status under the DTPA.  Given this failure, the TDCPA claims Plaintiffs bring under the DTPA's tie-in provision fail and should be *sua sponte* dismissed.  *See Bray*, 2010 WL 4053794, at *10 (dismissing the plaintiff's TDCPA claims he brought under the DTPA's tie-in section because he "[did] not fit [the] definition of 'consumer'" under the DTPA); *see also Carroll*, 470 F.3d at 1177.

## V.  OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to court

order.  *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, Nos. 3:96-CV-2923-D, 3:97-CV-0353-D, 2004 WL 789870, at *2 (N.D. Tex. Apr.12, 2004); *Sims*, 2001 WL 627600, at *2.  *Pro se* litigants may also amend their complaint in response to a recommended dismissal.  *See Swanson v. Aegis Commc'ns Group, Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at *1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1.  Nevertheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case.  *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiffs amended their complaint as a matter of right prior to serving it.  (*See* doc. 6.)  Their first amended complaint failed to state a viable claim.  *See Garcia*, 2012 WL 3847362, at *7 (dismissing Plaintiffs' complaint for failure to state a claim.)  Their proffered second amended complaint likewise failed to state a claim for relief.  *See id.* at *8.  Although the Court granted Plaintiffs the opportunity to amend their complaint for a third time (*see* doc. 48), they have still failed to state a claim against the Jenkins/Babb Defendants that withstands a Rule 12(b)(6) challenge.  Because it appears that Plaintiffs have pled their best case to the Court as to these defendants, no further opportunity to amend their complaint as to the Jenkins/Babb Defendants is warranted.

## VI.  RECOMMENDATION

The Jenkins/Babb Defendants' motion to dismiss should be **GRANTED,** and Plaintiffs' claims against them under the FDCPA should be **DISMISSED** with prejudice.  The Court should exercise supplemental jurisdiction over Plaintiffs' TDCPA and DTPA claims, and these claims should be *sua sponte* **DISMISSED** with prejudice.

SO RECOMMENDED on this 13th day of June, 2013.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE



### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE