IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISRAEL GARCIA JR., et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | No. 3:11-CV-3171-N-BH |
| | ) | |
| JENKINS/BABB LLP, et al., | ) | |
| | ) | |
| **Defendants.** | ) | Referred to U.S. Magistrate Judge |

<u>FINDINGS, CONCLUSIONS AND RECOMMENDATION</u>

Pursuant to *Special Order No. 3-251*, this action has been automatically referred for pretrial management.  Before the Court for recommendation is *Defendants Primary Financial Services, Margaret Morrissey, Chris Gilbert, Dustin T. Dudley, Attorney at Law, and Dustin T. Dudley's Motion for Summary Judgment* (doc. 56), filed January 27, 2012.  Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED.**

## I.  BACKGROUND

On November 16, 2011, Israel Garcia, Jr. and Melissa R. Garcia (Plaintiffs) filed this *pro se* action against Jenkins/Babb, LLP (Jenkins/Babb), Robert E. Jenkins (Jenkins), Jason Babb (Babb) (collectively, the Jenkins/Babb Defendants); and the law firm of Dustin T. Dudley, Attorney at Law (Dudley law firm), Dustin T. Dudley (Dudley), Primary Financial Services (Primary), Margaret Morrissey (Morrissey), Chris Gilbert (Gilbert), and Billi J. Geneser Gannon (Gannon)[1] (collectively, the Primary Defendants).  (doc. 3.)  Plaintiffs asserted claims against all defendants for violations of the federal Fair Debt Collections Practices Act (FDCPA), the Texas Debt Collection Practices Act (TDCPA), and the Texas Deceptive Trade Practices Act (DTPA).  (*Id.* at 1.)  Their claims arise

_____

[1] Gannon was subsequently dismissed pursuant to a joint stipulation of dismissal.  (*See* doc. 42.)

from a state court action filed by Jenkins/Babb in state court on behalf of Wells Fargo Bank, N.A. (WFB) to collect a debt, as well as from communications exchanged by the parties prior to the lawsuit. (*See id.* doc. 49 at 5–11.)

Primary mailed Plaintiffs a letter dated August 4, 2010, (the Primary letter) notifying them that their past due "account" with WFB "ha[d] been forwarded" to Primary for collection. (doc. 56-2 at 1.) The balance due was $17,018.68. (*Id.*) Plaintiffs were advised that if they did not dispute the "debt" within 30 days, the debt would be assumed to be valid. (*Id.*) If Plaintiffs disputed the debt, Primary would "obtain verification of the debt or obtain a copy of a judgment and mail [them] a copy of such judgment or verification." (*Id.*) In closing, the letter stated that it was "a communication from a debt collector" and "an attempt to collect a debt." (*Id.*)

Sometime after that, Dudley, Primary's "in-house counsel," mailed Plaintiffs a letter dated November 11, 2010, regarding the same debt (the Dudley letter). (doc. 56-3 at 6.) The letter stated that if Plaintiffs failed to make a payment "within the next 20 days," Dudley would recommend that a lawsuit be filed to collect the outstanding balance of $17,018.68. (*Id.*) In response, Plaintiffs sent Dudley a written communication demanding that Dudley and Primary "cease and desist" in their collection efforts "until validation of the alleged debt was provided." (*Id.* at 1–5.)[2]

Jenkins/Babb mailed Plaintiffs a similar letter dated January 14, 2011, referencing an "account" with WFB relating to a "Personal Loan Agreement" (the Jenkins letter). (doc. 49 at 16–18.) The letter, signed by Jenkins, provided that Jenkins/Babb was "attempting to collect a

---

[2] The communication was a standard, pre-printed form listing several consumer rights under the FDCPA, Regulation Z, and other federal consumer protection laws. (*See* doc. 56-3 at 1–5.) The date at the top of the letter is "November 19, 2009," but the signature line and notarization portion show a date of "November 19, 2010." (*See id.* at 1, 5.) Plaintiffs assert, without offering any evidence in support, that their communication was delivered by the U.S. Postal Service (USPS) on November 26, 2010, but they never received "any response" from either Dudley or Primary. (doc. 49 at 6–7.)

debt" on behalf of WFB and unless Plaintiffs disputed the debt in writing within 30 days, the debt would "be assumed to be correct." (*Id.*) Plaintiffs were instructed to pay the balance of $15,954.32 "plus 13% interest . . . from April 17, 2010 through [the] date of payoff." (*Id.* at 17.) Payment was to be made "in the form of a cashier's check or other certified funds made payable to [WFB]" and mailed to Jenkins/Babb's business address. (*Id.*) If payment was not received within 40 days, Jenkins/Babb would "file a lawsuit to collect [the] debt." (*Id.*) The letter was copied to Morrissey, a Primary employee. (*Id.*)

Plaintiffs received a second letter from Jenkins/Babb dated February 15, 2011, purportedly verifying the debt (the Jenkins verification). (doc. 56-4 at 1). The letter was sent in response to a communication sent by Plaintiffs "dated January 26, 2010, disputing the debt." (*Id.*) The letter was copied to Gilbert, another Primary employee, via email. (*Id.*) Jenkins/Babb also sent Plaintiffs copies of the following documents: (1) a "Transaction Statement" listing Plaintiffs as the borrowers on a "personal loan" (the WFB loan) and detailing their payment history from March 3, 2007 to March 15, 2010; (2) a billing statement dated May 5, 2010, reflecting a past due balance of $3,431.40 and a principal balance of $15,954.32; (3) a "personal loan agreement", signed by Plaintiffs on January 22, 2007; (4) a ledger sheet listing five credit card companies, including "Target National Bank" and "Chase Card Services"; and (5) copies of five cashier's checks drawn on WFB made payable to these companies. (*Id.* at 2–29.)

All claims in the live third amended complaint against the Jenkins/Babb Defendants have been dismissed. (*See* doc. 73.) Only the claims against the Primary Defendants (Defendants) remain, they now move for summary judgment on those claims. (*See* doc. 56.) With timely-filed responses and replies, the motion is now ripe for recommendation.

3

## II. EVIDENTIARY OBJECTION

In their sur-reply, Plaintiffs object to the copy of the Primary letter.  (*See* doc. 65.)[3]  They argue that the affidavit of Primary's custodian of records attached to Defendants' response did not lay the proper foundation for the business records exception to the hearsay rule because it contains "numerous errors."[4]  (*Id.* at 1–2.)

The Fifth Circuit has held that the testimony of a record custodian or "other qualified witness" is sufficient to lay the foundation for a business record.  *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008); *see also United States v. Towns*, No. 11-50948, 2013 WL 1809758, at *3 (5th Cir. Apr. 30, 2013) (unpublished).  "There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy."  *Brown*, 553 F.3d at 792 (citation and internal quotation marks omitted); *accord Jackson v. Blockbuster, Inc.*, No. CIV.A.4:09-CV-119, 2010 WL 2268086, at *3 (E.D. Tex. June 4, 2010) (explaining that "personal knowledge of all the contents of a business record affidavit is not required") (citing *Tex. A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).  Accordingly, "[a] qualified witness" is simply "one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met."[5]  *Brown*, 553 F.3d at 792 (quotation omitted);

---

[3]  Plaintiffs' motion for leave to file a sur-reply was granted by order dated May 29, 2013 (doc. 64).

[4]  Plaintiffs claim the affidavit "fails to state": (1) that the custodian "was employed by [Primary] at the time" the Primary letter was prepared and mailed; (2) the custodian's position and her "duties, responsibilit[ies], and authority" at the time; (3) that the custodian "personally prepared the letter and placed it into an envelope addressed" to Plaintiffs; (4) the "exact date those actions allegedly took place"; and (5) that the custodian "accompanied [Primary's] courier to the post office to witness" his or her mailing the letter "firsthand."  (doc. 63-1 at 1–2.)

[5]  These requirements are: (1) that the document record "an act, event, condition, opinion, or diagnosis;" (2) the record was made "at or near the time" those events or conditions took place; (3) the record was made "by, or from information transmitted by, someone with knowledge;" (4) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" and (5) "making the record was a regular practice of that activity."  Fed. R. Evid. 803(6).

*see also Towns*, 2013 WL 1809758, at *3 ("A proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6).") The inquiry focuses on whether "the witness's testimony [is] sufficient to support the document's reliability." *Albright v. IBM Lender Bus. Process Servs., Inc.*, No. 4:11-CV-1045, 2013 WL 1089053, at *2 (S.D. Tex. Mar. 14, 2013) (citing *Travland v. Ector Cnty., Texas*, 39 F.3d 319, at *4 (5th Cir. 1994) (per curiam)).

Here, the custodian's affidavit states that she is "the custodian of records of [Primary]" and is "personally acquainted with the facts" stated in her affidavit.  (doc. 62-1 at 1.)  She explains that the Primary letter and a document titled "Client Audit Report"—to which Plaintiffs did not object— meet the requirements of Rule 803(6).[6]  (*Id.* at 1–2.)  She affirms that the letter "was prepared by [Primary] and placed in an envelope addressed to" Plaintiffs at their home address, "was picked up by [Primary's] courier[,] and taken to a post office maintained and operated by the [USPS] . . . where it was delivered into the possession of the USPS for mailing."  (*Id.* at 2.)  She also affirms that Primary's "records", i.e., the client status report, "do not indicate that the letter was returned [to Primary] undeliverable."  (*Id.*)

Because the custodian's affidavit shows the requirements of Rule 803(6) are satisfied and evidences the "reliability" of the Primary letter, it is a "qualifying affidavit" and therefore properly lays the foundation for the business records exception.  *See Brown*, 553 F.3d at 792; *see also Albright*, 2013 WL 1089053, at *2.  Accordingly, Plaintiffs' evidentiary objection is overruled and the copy of the Primary letter is admitted for purposes of Defendants' summary judgment motion.

---

[6] The custodian affirms that the letter and client audit report were "records from [Primary];" were kept by Primary "in the regular course of business;" "it was the regular course of business of [Primary] for an employee or representative . . . with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record[s] or transmit the information thereof to be included in [them];" they were "made at or near the time or reasonably soon thereafter;" and the records "are the original or exact duplicates of the original."  (doc. 62-1 at 1–2.)

### III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "[T]he substantive law [determines] which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant must inform the court of the basis of its motion and identify the evidence that shows there are no genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324.  To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.[7]

All of the evidence must be viewed in a light most favorable to the motion's opponent. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).  Yet, neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  Generally, the courts liberally construe the

---

[7]  "The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'"  *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).

pleadings of a *pro se* plaintiff.  *See, e.g.*, *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972) (per

curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*,

752 F. Supp. 213, 218 (N.D. Tex. 1990).  However, the courts have no obligation under Fed. R. Civ.

P. 56 "to sift through the record in search of evidence to support a party's opposition to summary

judgment."  *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v.

Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998)).  Instead, the party opposing summary

judgment must "identify specific evidence in the record" that supports the challenged claims and

"articulate the precise manner in which that evidence supports [those] claim[s]." *Ragas*, 136 F.3d

at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  Summary judgment in favor of

the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish

the existence of an element essential to her case and as to which she will bear the burden of proof

at trial.  *Celotex*, 477 U.S. at 322–23.

## IV. FDCPA

Defendants move for summary judgment on all of Plaintiffs' FDCPA claims, arguing that

the WFB loan was not a "consumer debt" for purposes of the Act because Plaintiffs have denied its

existence.  (doc. 56-1 at 4.)  They also argue that Plaintiffs are unable to show that the loan proceeds

were used primarily for personal, family, or household purposes.[8]  (*Id.*)

---

[8]  Plaintiffs may sue under the FDCPA even if the WFB loan did not belong to them.  The FDCPA "is designed to protect consumers who have been victimized by unscrupulous debt collectors, *regardless of whether a valid debt actually exists.*" *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992) (citing *Baker v. G.C. Serv. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)) (emphasis added); *accord Azar v. Hayter*, 66 F.3d 342 (11th Cir. 1995) (holding that a plaintiff's ability to recover under the FDCPA has "nothing to do with whether the underlying debt is valid" because the statute regulates "the method of collecting the debt"); *see also* H.R. Rep. No. 131, 95th Cong. 1st Sess. 8 ("This bill also protects people who do not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts.").  Only Defendants' second argument is therefore discussed in detail.

The FDCPA was enacted to eliminate "abusive, deceptive, and unfair debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It also seeks to "ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)). Among other things, the FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, and abuse," and from making "false, deceptive, and misleading misrepresentations in connection with debt collection." 15 U.S.C. §§ 1962d and 1962e.

Notably, "[t]he FDCPA applies only to debts as they are defined in the statute." *Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114-TJW-CE, 2011 WL 1195941, at *4 (E.D. Tex. Mar. 7, 2011), *rec. adopted*, 2011 WL 1157692 (E.D. Tex. Mar. 28, 2011). The statute defines a "debt" as "any obligation or alleged obligation of a consumer[9] to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). "Whether an obligation is a 'debt' within the meaning of the statute is 'a question of law for the Court's determination.'" *Fleming v. Pickard*, No. C07-0223-JCC, 2007 WL 3129575, at *2 (W.D. Wash. Oct. 22, 2007), *aff'd*, 581 F.3d 922 (9th Cir. 2009); *Graham v. Manley Deas Kochalski LLC*, No. 08-CV-120, 2009 WL 891743, at *7, *10 (S.D. Ohio Mar. 31, 2009) (citation omitted). "It is a plaintiff's burden to show that the obligation at issue was incurred 'primarily for personal, family, or household purposes.'" *Hunter v. Washington Mut. Bank*, No. 2:08-CV-069, 2012 WL 715270, at *2 (E.D. Tenn. Mar. 1, 2012) (citations omitted); *Graham*, 2009 WL 891743, at *4.

---

[9] A "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

8

A.      **Applicable Standard**

The Fifth Circuit has not specifically addressed the applicable standard for construing the term "consumer debt" in cases involving the FDCPA.  "Due to the small number of cases interpreting 'debt' under the FDCPA, some federal courts [have used] the standards under the Truth in Lending Act (TILA)[10] to determine whether a debt is primarily for personal, family, or household purposes."  *Graham*, 2009 WL 891743, at *7 (citing *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992)); *see also Hetherington v. Allied Int'l Credit Corp.*, No. CIV H-07-2104, 2008 WL 2838264, at *3 (S.D. Tex. July 21, 2008) (looking to the Fifth Circuit's interpretation of a "consumer credit transaction" under TILA in *Riviere v. Banner Chevrolet, Inc.*, 184 F.3d 457, 461–63 (5th Cir. 1999) to determine whether the alleged obligation was a "consumer debt" under the FDCPA); *Perk v. Worden*, 475 F. Supp. 2d 565, 569 (E.D. Va. 2007) (in determining whether the debt at issue was "incurred for personal use" for purposes of the FDCPA, the court followed the Fifth Circuit's interpretation of a "consumer credit transaction" under TILA in *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir. 1980) and *Riviere*, 184 F.3d at 461–63.  These courts have looked to TILA for guidance because both TILA and the FDCPA contain "analogous" definitions of a "consumer" transaction, i.e., both statutes define it as a transaction in which the underlying obligation is incurred for "personal, family, or household purposes."  *See Bloom*, at 1068; *Perk*, 475 F. Supp. 2d at 569; *see also* 15 U.S.C. §§ 1692a(5), 1602(i); 12 C.F.R. § 226.2(a)(12) (2012) (Regulation Z, promulgated by the Federal Reserve Board to implement TILA, provides that "consumer credit" is "credit offered

_____

[10]  TILA,15 U.S.C. § 1601 *et seq.*, was enacted as part of the Consumer Credit Protection Act of 1968.  *See* Pub. L. 90-321, Title I, § 102, May 29, 1968, 82 Stat. 146.  Among other things, TILA requires lenders to make numerous disclosures when conducting a "consumer credit transaction", including the amount financed, the finance charge, the total sale price, and information regarding debt cancellation.  *See* 15 U.S.C. § 1639(a); 12 C.F.R. §§ 226.1(a), 226.17–18.

or extended to a consumer primarily for personal, family, or household purposes").

The Court agrees that the case law interpreting TILA's definition of a "consumer credit transaction" is instructive in construing "consumer debt" under the FDCPA. In addition to their analogous language, TILA and the FDCPA share a common purpose: both are remedial statutes that seek to protect individuals as opposed to business entities. *See Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir. 1995) ("The purpose of the TILA is to protect the *consumer* from inaccurate and unfair credit practices.") (citing 15 U.S.C. § 1601(a)) (emphasis added); *see also Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000) (explaining that the FDCPA "regulates the debt collection tactics employed against *personal* borrowers on the theory that they are likely to be unsophisticated about debt collection and thus prey to unscrupulous collection methods") (emphasis in original);[11] *Burns v. First Am. Bank*, No. 04 C 7682, 2005 WL 1126904, at *4 (N.D. Ill. Apr. 28, 2005) (noting that TILA and the FDCPA "are designed to protect consumers and appear under the capacious umbrella of the Consumer Credit Protection Act") (citation and internal quotation marks omitted).

In classifying a credit transaction under TILA, the Fifth Circuit has held that courts "must examine the transaction as a whole and the purpose for which the credit was extended in order to determine whether th[e] transaction was primarily consumer or commercial in nature." *Riviere*, 184 F.3d at 462 (citing *Tower*, 625 F.2d at 1165). Courts must focus on "the substance of the transaction . . ., rather than the form alone." *Id.*; *Poe v. First Nat. Bank of DeKalb Cnty.*, 597 F.2d 895, 896 (5th

---

[11] Both statutes exempt commercial transactions from their reach. TILA contains an explicit exemption for "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1). Similarly, the FDCPA's legislative history states that the Act "applies only to debts contracted by *consumers* for *personal, family, or household purposes*; it has no application to the collection of commercial accounts." Consumer Credit Protect Act, S. Rep. No. 95–382, at 3 (1977), *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695 (emphasis added).

Cir. 1979) (per curiam).  Although the documents memorializing the transaction are relevant, these are not dispositive.  *See Riviere*, 184 F.3d at 462 ("That the documents relevant to this transaction label it as 'consumer' is not dispositive.").  For example, in *Poe*, the plaintiffs obtained three loans on behalf of their business and later consolidated the loans into the single loan that was the subject of the lawsuit, signed personal guarantees on the loan, and secured the loan by granting a lien on their residence.  *Poe*, 597 F.2d at 896.  The Fifth Circuit affirmed summary judgment for the defendant lender on the plaintiffs' TILA non-disclosure claim, holding that despite the plaintiffs' personal guarantees and the lien on their home, the loan was commercial rather than consumer in nature because the funds from "each transaction" were used to "finance a corporation and its business." *Id.*  By contrast, in *Tower*, the Court found that the home improvement loan at issue was primarily "personal" in nature and therefore a consumer credit transaction under TILA even though the plaintiff was leasing the mortgaged property; it found significant that the plaintiff had "resided in the [] home for a long period of time, visited that home periodically over the years, [] fully expect[ed] to reside in the home upon her retirement[,] . . . [and] the intervening lessee [was] staying there largely in a custodial role paying nominal rent").  As these cases demonstrate, regardless of the loan's structure, the borrower's ultimate use of the loan proceeds is what constitutes the "substance" of the transaction.  *See id.*; *see also Garcia v. LVNV Funding*, No. A–08–CA–514–LY, 2009 WL 3079962, at *3 (W.D. Tex. Sept. 18, 2009) (citation omitted).

**B.**    ***Application of the TILA Standard***

Where as here, the non-movant bears the burden of proof, the movant's burden may be discharged by pointing out the absence of evidence to support the non-movant's case.  *See Celotex*, 477 U.S. at 325.  By pointing to the lack of evidence to show that the WFB loan was used primarily

11

for personal, family, or household purposes, Defendants have met their initial summary judgment burden. *See id.* at 323. To defeat the motion for summary judgment, Plaintiffs must now identify facts that support this essential element of their FDCPA claims and establish a genuine issue of material fact for trial. *See Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). ("[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is appropriate.") (citing *Celotex*, 477 U.S. at 322–23.)

In their third amended complaint, Plaintiffs state only that the "obligation" "ar[ose] from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes." (doc. 49 at 5.) They argue in their verified response brief that the obligation is a consumer debt because it arose from a "personal loan agreement," and because the dunning letters "were not addressed to a business but instead to the Plaintiffs at their residence." (doc. 61 at 7.) The label of "personal loan" is conclusory. As discussed, the documents relating to the lending transaction are not dispositive. *See Riviere*, 184 F.3d at 462. Even if considered, the document titled "Personal Loan Agreement" Plaintiffs executed does not provide any indication as to how the loan proceeds were used. (*See* doc. 56-4 at 7–15.) Likewise, Plaintiffs' allegation that the WFB loan is a consumer debt because Defendants mailed the dunning letters to their home address is not determinative. The mere fact that communications regarding a debt are mailed to the plaintiff's home address does not by itself determine the debt's character. *See Holman v. W. Valley Collection Servs., Inc.*, 60 F. Supp.2d 935, 936 (D. Minn. 1999) (explaining that "[l]etters delivered to [a plaintiff's] home do not change Congress's explicit words" as stated in 15 U.S.C. § 1692a(5)).

Plaintiffs also point to attachments to Defendants' summary judgment motion consisting of

copies of a bank ledger and five cashier's checks made payable to third parties, and they assert that

"the funds from the debt were used to consolidate [their] existing consumer credit accounts." (doc.

61 at 7; *see also* doc. 56-4 at 17–19.)  Courts' approaches differ on characterizing a loan that was

obtained to refinance or consolidate existing credit obligations.  *See Graham*, 2009 WL 891743, at

*7 (describing at least three different approaches to determine this issue).  In *Poe*, the Fifth Circuit

focused on the three original loans that the current loan (the loan at issue) was consolidating to

determine the character of the current loan.  *See Poe*, 597 F.2d at 896.  It found that the current loan

was commercial because the existing, consolidated loans were commercial since they had been used

"to finance the [plaintiffs'] corporation."  *Id.*

Here, given Plaintiffs' statement that they used the WFB loan proceeds solely to consolidate

existing "consumer" credit card debt, under a "substance over form" analysis, it is still their burden

to produce summary judgment evidence sufficient to create a genuine issue of material fact that they

used the alleged credit cards (i.e., the existing debt being consolidated) for personal, family, or

household purposes.  *See Hunter*, 2012 WL 715270, at *2.  In the case of accounts that are subject

to indefinite transactions, such as credit cards and deposit accounts, what matters is the "nature of

the debt that was [actually] incurred, and not the purpose for which the [a]ccount was [originally]

opened."  *Vick*, 2011 WL 1195941, at *5; *Hetherington*, 2008 WL 2838264, at *3–4.  In

*Hetherington*, although the plaintiff's business checking account was purportedly opened for

commercial purposes, he submitted bank statements showing "that there were a significant number

of transactions from the [] Account for expenses such as gas, groceries, [family] meals [], and other

personal items."  *Hetherington*, 2008 WL 2838264, at *4.  The court held that this evidence

established triable issues of material fact as to whether the insufficient funds sought to be collected

by the defendant bank constituted a "consumer debt" under the FDCPA.  *Id.*  In *Vick*, the court likewise found that the plaintiffs created an issue of material fact by submitting evidence showing that they made purchases with their corporate credit card that were primarily for personal, family, or household purposes.  *Vick*, 2011 WL 1195941, at *5.  By contrast, in *Bloom* (cited with approval by the Fifth Circuit in *Riviere*, 184 F.3d at 462), the plaintiff obtained a $5,000 loan from a friend (the defendant) and used the funds as venture capital for his software company.  *Bloom*, 972 F.2d at 1068.  The Ninth Circuit affirmed summary judgment for the defendant, holding that the obligation was not a "consumer debt" because the plaintiff used the funds for a business purpose.  *Id.* at 1068–69.  Citing *Bloom*, the court in *Holman* held that because a "credit card processing unit is simply not used primarily for personal, family, household purposes," "[e]ven if [the] plaintiff's [personal] credit card was used to purchase the device," the resulting obligation was "not covered by the [FDCPA]."  *Holman*, 60 F. Supp.2d at 936.

Plaintiffs have failed to bring forth any evidence showing that they used the alleged credit cards for purchases that were primarily for personal, family, or household purposes.  Rule 56's allowance for affidavits opposing summary judgment is not intended to "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."  *Lujan v. Natl. Wildlife Federation*, 497 U.S. 871, 888 (1990) (citations omitted).  To preclude summary judgment, Plaintiffs cannot rely on the bare allegations in their complaint, but must come forward with evidence outside the pleadings sufficient to create a factual dispute regarding the issue of whether the WFB loan was a "consumer debt" as contemplated by the FDCPA.  *See Celotex*, 477 U.S. at 324; *Hunter*, 2012 WL 715270, at *2.  As discussed, when a moving party has carried its summary judgment burden, the non-movant must do more than simply create "some metaphysical doubt as

to the material facts" and "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 586–587.  Plaintiffs' verified response simply restates their bare conclusory assertion that they obtained the WFB loan for consumer purposes, but it provides no additional facts that could lead a rational trier of fact to find in their favor on this issue. *See Browne v. Portfolio Recovery Associates, Inc.*, No. CIV.A. H-11-02869, 2013 WL 871966, at *4 (S.D. Tex. Mar. 7, 2013) ("[W]ithout at least some evidence that this particular alleged debt meets the [FDCPA] statutory definition, plaintiff cannot establish a genuine dispute of material fact as to his consumer status.") Because there is no genuine issue of material fact with respect to whether the WFB loan was a consumer debt, Defendants' motion for summary judgment should be granted on Plaintiffs' claims under the FDCPA.

## V.  STATE LAW CLAIMS

Defendants also seek summary judgment on Plaintiffs' claims under the TDCPA and the DTPA.  (doc. 56-1 at 12–15.)

### A.    <u>Supplemental Jurisdiction</u>

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. CIV.A.3:06-CV-879BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims. *Nagy v. George*, No. 3:07-CV-368-K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), *aff'd*, 286 F. App'x 135 (5th Cir. 2008); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).[12] Nonetheless, this rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiff's right."). In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, all three factors weigh in favor of retaining jurisdiction over Plaintiffs' state law claims under the TDCPA and DTPA. First, Plaintiffs' state claims arise from the same "common nucleus of operative facts" as their federal claims, namely, Defendants' alleged conduct in attempting to collect a debt from Plaintiffs on behalf of WFB. Requiring Plaintiffs to litigate these claims in state

---

[12] Under § 1367(c), a court may decline to exercise supplemental jurisdiction over a state claim if:
(1) the claim raises a novel or complex issue of state law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C. § 1367(c).

court would "necessarily require consideration by two distinct courts of the same operative facts" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Moreover, because the action has been pending in this Court for nearly two years and Plaintiffs have amended their complaint three times, the Court has spent a substantial amount of time and resources reviewing the pleadings and researching the legal issues involved, and has become familiar with the merits of their claims. *See McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources that it has spent adjudicating the case). Notably, the Court has already exercised supplemental jurisdiction over Plaintiffs' state law claims against the Jenkins/Babb Defendants. *See Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2013 WL 3789830, at *1 (N.D. Tex. July 22, 2013) (accepting findings and recommendations of U.S. Magistrate Judge dismissing with prejudice all of Plaintiffs' claims against the Jenkins/Babb Defendants). The Court should therefore exercise supplemental jurisdiction over Plaintiffs' claims under the TDCPA and the DTPA against the Primary Defendants and review the claims on the merits.

**B.   TDCPA**

Defendants seek summary judgment on Plaintiffs' claims under the TDCPA[13] on grounds that Plaintiffs have failed to show that the WFB loan is a "consumer debt" as defined by the TDCPA. (doc. 56-1 at 13.)

"The TDCPA prohibits debt collectors from using various forms of threatening, coercive,

---

[13] Plaintiffs allege that Defendants engaged in "unfair and unconscionable means ... to collect a debt" under § 392.303(a)(2) and "made false, deceptive, or misleading representations" under §§ 392.304(a)(8) and 392.304(a)(19) of the TDCPA. (doc. 49 at 5–13.) They assert their § 392.304(a)(19) claim as a stand-alone claim under the TDCPA and attempt to recover for all three claims under the DTPA. (*See id.* at 6, 8, 12–13.)

harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M BH, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *rec. adopted*, 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012) (citation omitted).  The TDCPA "applies only to debts incurred by a 'consumer,' defined as 'an individual who owes or allegedly owes a debt created primarily for personal, family, or household purposes.'" *McDonald v. Bennett*, 674 F.2d 1080, 1089 (5th Cir. 1982); *see also* Tex. Fin. Code §§ 392.001(2), (5).  Because "consumer debt" has the same definition in the TDCPA as in the FDCPA, the same analysis may be applied to both statutes.  *See Hetherington*,  2008 WL 2838264, at *3–4 (explaining that whether an obligation is a "consumer debt" under either the FDCPA or the TDCPA is determined by the borrower's "use of [the] loan proceeds").  As with the FDCPA, "[w]hat legally constitutes a debt under [the TDCPA]" is determined "as a matter of law." *Dickey v. Healthcare Recoveries, Inc.*, No. 03-97-00351-CV, 1998 WL 20728, at *2 (Tex. App.—Austin Jan. 23, 1998, no pet.) (mem. op.).

To meet their summary judgment burden, Defendants argue that there is no evidence in the record showing that Plaintiffs obtained the WFB loan for personal, family, or household purposes. (doc. 56-1 at 13.)  By directing the Court's attention to the absence of evidence supporting an essential element of Plaintiffs' TDCPA claims, on which they will bear the burden of proof at trial, Defendants have properly discharged their summary judgment burden.  *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiffs to identify evidence sufficient for a rational trier of fact to find that the WFB loan is a "consumer debt" under the TDCPA.  As previously discussed, given Plaintiffs' allegation that they used all of the loan proceeds to consolidate existing consumer credit card debt, they must proffer evidence sufficient to show that they used those cards primarily for personal, family, or household purposes.  Because they have failed to direct the Court's attention

to any such evidence in the record, Defendants' motion for summary judgment should be granted with respect to Plaintiffs' claims under the TDCPA.

## C.   **Tie-in Claims under the DTPA**

Defendants next move for summary judgment on Plaintiffs' claims under the "tie-in" provision of the DTPA arguing that Plaintiffs are not "consumers" for purposes of the DTPA.[14] (doc. 56-1 at 13–15.)

"The TDCPA is a 'tie-in' statute to the [DTPA]." *Guajardo v. GC Servs., LP*, 498 F. App'x 379, 382 (5th Cir. 2012) (per curiam); *see also* Tex. Fin. Code Ann. § 392.404(a) ("A violation of this chapter is a deceptive trade practice under Subchapter E, Chapter 17 [of the DTPA] and is actionable under that subchapter."); Tex. Bus. & Com. Code § 17.50(h). "To succeed under such a tie-in claim, however, the claimant must show that he is a 'consumer' as defined in the DTPA." *Garcia*, 2013 WL 3789830, at *12 (alterations and quotations omitted); *Bray v. Cadle Co.*, No. CIV.A. 4:09-CV-663, 2010 WL 4053794, at *9 (S.D. Tex. Oct. 14, 2010) (explaining that all Texas state and federal courts addressing the issue "seem to have concluded that 'the party bringing a claim under the DTPA for a violation of a tie-in statute must still satisfy the requirement of being a 'consumer' " under the DTPA) (collecting cases).

The DTPA defines "consumer" in relevant part, as "an individual ... who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2007). To be a consumer, "a person must have sought or acquired goods or services by purchase or lease" and those goods or services "must form the basis of the complaint." *Hurd v. BAC Home*

---

[14] Plaintiffs attempt to recover for their TDCPA claims under §§ 392.303(a)(2), 392.304(a)(8), and 392.304(a)(19) pursuant to Tex. Bus. & Com. Code § 17.50(h), the "tie-in" provision of the DTPA. (*See* doc. 49 at 6, 8, 12–13.)

*Loans Servicing, LP*, 880 F. Supp. 2d 747, 765 (N.D. Tex. 2012) (citing *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 539 (Tex. 1981)).  Because the lending of money is not a good or service, a borrower whose sole objective is to get a loan is not a consumer under the DTPA.  *Walker v. Fed. Deposit Ins. Corp.*, 970 F.2d 114, 123 (5th Cir. 1992) (citing *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, (Tex. 1980)).  A borrower may be a consumer if he seeks to acquire goods or services with the loan, and the goods or services form the basis of his DTPA complaint.  *See id.* (citing to *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex. 1983) and *Knight v. Int'l Harvester Credit Corp.*, 627 S.W.2d 382 (Tex. 1982)).

To meet their summary judgment burden, Defendants contend there is no evidence showing that Plaintiffs "sought or acquired goods or services by purchase or lease from Defendants or that any goods or services acquired form the basis of their complaint."  (doc. 56-1 at 17.)  Defendants have discharged their burden by pointing to the lack of evidence supporting an essential element of Plaintiffs' tie-in claims on which they will bear the burden of proof.  *See Celotex*, 477 U.S. at 325.

The burden now shifts to Plaintiffs to proffer evidence sufficient for a reasonable jury to find they are consumers under the DTPA.  Not only do Plaintiffs fail to produce any evidence showing they obtained the WFB loan to seek or acquire goods or services that now form the basis of their complaint, but they even state they obtained the loan to "consolidate existing consumer credit accounts."  (doc. 61 at 7.)  Given their concession that their sole objective was to consolidate existing debt rather than to finance the purchase or lease of any goods or services, Plaintiffs have failed to meet their burden to establish a genuine material fact issue with respect to their "consumer" status under the DTPA.  Defendants' motion for summary judgment on Plaintiffs' tie-in claims under the DTPA should therefore be granted.

## VI.  RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED,** and all of Plaintiffs'

claims against them should be **DISMISSED with prejudice.**

**SO RECOMMENDED** on this 29th day of October, 2013.

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_Irma Carrillo Ramirez_
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE